UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YASNIEL ZALDIVAR REGALADO, A-244-174-974 | No.  1:26-cv-02968-DC-DMC-HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN, CALIFORNIA CITY CORRECTION CENTER, et. al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pending before the Court is Respondents' motion to dismiss, ECF No. 7, Petitioner filed oppositions/status updates, ECF Nos. 9, 19, 20, and 21. Also pending before the Court is Petitioner's motion to supplement the record., filed as a joint opposition to the motion to dismiss and motion See ECF No. 21.

**I. BACKGROUND**

A.    **Procedural History**

Petitioner filed a petition for writ of habeas corpus along with a motion for immediate release or, in the alternative, a bond hearing. See ECF Nos. 1 and 2. The District Judge directed Respondents to respond, specifically directing them to "substantively address whether

1

there are any factual or legal issues in this case that materially distinguish it from the court's prior orders [Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025), Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025), and D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026)]." ECF No 6. Respondents timely filed a joint opposition to Petitioner's motion for injunctive relief and a motion to dismiss the petition, ECF No. 7, and Petitioner filed what the Court construed as a reply, ECF No. 9.

The District Judge granted Petitioner's motion in part, finding that Respondents distinguished Petitioner from the cited cases because "Petitioner was detained following his arrest for grand theft auto," and, relying on prior findings, the District Judge concluded that "where the government presents non-pretextual reasons to re-detain a noncitizen previously released into the United States, the proper remedy for the government's failure to provide a pre-deprivation bond hearing is a post-deprivation bond hearing, not immediate release." ECF No. 10 (citing Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627 (E.D. Cal. Jan. 31, 2026)). Thus, on May 15, 2026, the District Judge ordered Respondents to provide Petitioner "with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence," within fourteen days of the order and denied the motion as to Petitioner's request for immediate release. Id.

Respondents filed a notice of compliance showing a bond hearing was conducted on May 29, 2026. See ECF No. 12. Upon finding the immigration judge improperly placed the burden on Petitioner, contrary to the District Judge's order, Respondents' counsel requested a new bond hearing. See ECF No. 14.  A bond hearing was conducted on June 9, 2026, and "[t]he Immigration Judge found that 'the DHS established by clear and convincing evidence' that Petitioner is a flight risk and therefore denied a bond." ECF No. 17, pg. 1 (quoting ECF No. 17-1, pg. 1).

///

///

///

**B.**     **Factual History**

Petitioner asserts that he is a citizen of Cuba who was detained by Immigration and Customs Enforcement (ICE) on March 1, 2026. See ECF No. 1, pg. 1. Petitioner contends that, at the time of his detention, he had a work permit, social security number, and pending application for asylum. See id. Petitioner argues his detention violates his due process rights because he was not provided an individualized bond hearing. See id. at 2.

Respondents assert that Petitioner was previously granted parole into the United States and Petitioner was then "re-detained Petitioner after he was arrested for grand theft auto." ECF No. 7, pg. 1. Respondents concede that "this case is not distinguishable from cases listed in the Court's Order." Id. Respondents argue that Petitioner is subject to mandatory detention pursuant to §1225(b)(2) and such detention is lawful as applied because Petitioner's release was conditional and "Petitioner (1) had an encounter with law enforcement; (2) had a period of release terminated because of that law enforcement encounter." Id. at 3.

In opposition, Petitioner asserts that he "entered the United States after being granted parole and subsequently pursued lawful immigration relief," including an application for adjustment of status under the Cuban Adjustment Act, which remains pending. ECF No. 21, pg. 2. Petitioner contend that he is not a flight risk which is demonstrated by the fact that he previously "obtained employment authorization [] and has continuously pursued lawful immigration status." Id. Petitioner also provides that the criminal charges which Respondents cite did not result in conviction and were dismissed on February 27, 2026, thus, Petitioner argues he does not present a danger to the community. See id.


**II. DISCUSSION**

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody, and Petitioner was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus because Petitioner's detention violates due process and recommend that Petitioner be immediately released from Respondents' custody under the same

conditions Petitioner was released previously.

### A. Due Process

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### 1. Liberty Interest

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest

4

in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Respondents contend that Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) but there is no evidence in the record that an immigration officer made the requisite determinations for § 1225(b)(2)(A) to apply – that Petitioner is seeking admission and not clearly and beyond a doubt entitled to be admitted. Following and adopting the reasoning of other courts, this Court finds Petitioner is not actively seeking lawful entry because he already entered the United States over three years ago. See Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country.). Indeed, Petitioner applied for both employment authorization, which was approved, and for adjustment of status, which remains pending, in 2024 ECF No. 7-1, pg. 3, but was detained in 2026.

Respondents' proposed interpretation of the statute disregards the relationship between §§ 1225 and 1226 and would render the recent amendment to § 1226(c) superfluous. Lepe v. Andrews, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025). Specifically, and as many courts have discussed in length, if every "applicant for admission" is subject to mandatory detention under § 1225, there would have been no need for § 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" and who has been "charged with, arrested for, or admits to" committing certain crimes. 8 U.S.C. § 1226(c)(1)(E); Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug 19, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

///

5

Indeed, prior to a July 2025 memorandum changing its' policy, the government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196. This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting Respondents' interpretation of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v. Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

For these reasons, this Court rejects the government's contention that Petitioner is an "applicant for admission" subject to § 1225(b)(2) and finds that Petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because Petitioner has resided in this country for over three years since Petitioner was released into the United States on parole, until Petitioner was arrested and detained on March 1, 2026. Petitioner's detention on March 1, 2026, was not upon Petitioner's arrival to the United States. Petitioner's detention goes against United States

Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

2.      Process Due

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for almost three years. Petitioner received work authorization which was still valid when he was detained. Despite that, Petitioner has now been detained for over four months. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is high. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3. Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Thus, Court finds there is a serious likelihood

Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). This Court finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without prior notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process").

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases).

Thus, the undersigned finds Petitioner is entitled to relief as to Petitioner's due process claim and will recommend granting Petitioner's petition for writ of habeas corpus.

8

**B.    Scope of Relief**

The undersigned has previously recommended the immediate release of petitioners whose due process rights were violated when they were denied a pre-deprivation hearing prior to re-detention. See Cortez v. Warden of the California City Detention Facility, No. 1:26-CV-03349-DAD-DMC-HC, 2026 WL 1816156 (E.D. Cal. June 24, 2026), report and recommendation adopted, 2026 WL 1872302 (E.D. Cal. June 29, 2026); R. M. v. Warden of the Golden State Annex Detention Facility, No. 1:26-CV-02512-DC-DMC-HC, 2026 WL 1453980 (E.D. Cal. May 22, 2026), report and recommendation adopted, 2026 WL 1715393 (E.D. Cal. June 12, 2026); Alas Paz v. Warden of California City Detention Facility, No. 1:26-CV-2881-DC-DMC-HC, 2026 WL 1431083 (E.D. Cal. May 21, 2026), report and recommendation adopted, 2026 WL 1706984 (E.D. Cal. June 12, 2026).

However, here, the District Judge previously determined that, because Petitioner was detained following an arrest, his detention was not pretextual and therefore a bond hearing was the proper remedy for the violation of Petitioner's rights, citing Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627 (E.D. Cal. Jan. 31, 2026). In Calvillo, the District Judge found that petitioner was entitled to relief as their due process rights were violated when they were detained without a pre-deprivation bond hearing but that no additional relief was necessary because petitioner was provided a post-deprivation bond hearing in compliance with the District Judge's order granting injunctive relief. See Aguilar Calvillo v. Chestnut, No. 1:26-CV-00569 DC CSK, 2026 WL 1091505 (E.D. Cal. Apr. 22, 2026), report and recommendation adopted, No. 1:26-CV-00569-DC-CSK, 2026 WL 1696829 (E.D. Cal. June 11, 2026). Here, on May 15, 2026, the District Judge ordered a bond hearing be held within fourteen days, and Respondents conducted a bond hearing on May 29, 2026, but the burden was improperly placed on Petitioner contrary to the District Judge's order. Respondents' counsel requested Petitioner be provided a bond hearing with the burden placed on Respondents, as the District Judge ordered. That hearing was conducted on June 9, 2026, outside the fourteen-day deadline. The undersigned acknowledges Respondents' counsel taking the initiative to request a second bond hearing where the burden was properly placed on Respondents.

As explained, the undersigned finds Petitioner here is entitled to relief as his due process rights were violated when he was detained without a pre-deprivation bond hearing. However, at the direction of the District Judge, Petitioner was provided procedural protection in the form of a bond hearing. Petitioner now challenges the determination made by the immigration judge, arguing that he does not present a danger to the community and that "dismissed criminal allegations should not outweigh the substantial evidence demonstrating his community ties, lawful immigration history, pending adjustment application, available sponsors, and stable residence." ECF No. 21, pgs. 2-3.

After a custody redetermination hearing, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Rodriguez Diaz, 53 F.4th at 1197 (citing 8 C.F.R. § 1003.19(e)). Here, the immigration judge denied Petitioner's custody redetermination, citing that "[w]hile [Petitioner] testified that each of he charges have been dismissed, [Petitioner] has no submitted any documents to corroborate his statements." ECF No. 14-1, pg. 1. Petitioner indicates that he has documents which show the charges were dismissed, proof of sponsors, and proof of stable employment. See ECF No. 20. Thus, it appears to the undersigned that Petitioner may be entitled to an additional bond hearing to the extent that those documents and the proof Petitioner cites presents a change in circumstance. However, the undersigned finds a custody redetermination hearing is the appropriate process for Petitioner to present such evidence, rather than habeas relief. Accordingly, the undersigned will recommend the petition be granted but that Petitioner not be provided additional relief as the relief provided, a bond hearing, satisfies due process.

In light of this recommendation, the undersigned will additionally recommend that Petitioner's motion to supplement the record be denied as moot.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1. It is RECOMMENDED that Respondents' motion to dismiss, ECF No. 7, be DENIED;

2.      It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as Petitioner's detention violates due process; Because petitioner received the renewed bond hearing in compliance with the District Judge's May 15, 2026 order, no further relief is warranted.

3.      It is RECOMMENDED that Petitioner's motion to supplement the record, ECF No. 21, be DENIED AS MOOT.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 9, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

11